MORELAND *v.* ARMSTRONG.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—REASONABLENESS.
   A zoning ordinance must be reasonable and its reasonableness becomes the test of its legality.

2. SAME—DEPRECIATION IN VALUE OF PROPERTY.
   Mere depreciation in the value of property resulting from the adoption of a zoning ordinance is insufficient to establish that such ordinance is unreasonable.

3. SAME—REASONABLENESS OF ZONING ORDINANCE.
   In determining the reasonableness of a zoning ordinance, each case must be determined upon its own facts.

4. SAME—CLASSIFICATION IN ZONING ORDINANCE—BUSINESS AREA.
   Classification in zoning ordinance of property on opposite sides of city block from those extending to intersection of two main streets of a city as a commercial area while other side of street was classified as residential area *held,* not unreasonable under circumstances disclosed.

5. COSTS—VALIDITY OF ZONING ORDINANCE.
   No costs are awarded in suit to determine validity of classification of areas in city zoning ordinance.

Appeal from Lenawee; Rathbun (G. Arthur), J. Submitted January 14, 1941. (Docket No. 99, Calendar No. 41,459.) Decided March 11, 1941.

Bill by Robert T. Moreland and others against George W. Armstrong, Arch T. Wilson and Adelbert Vedder, constituting the City Commission of Adrian, to restrain the issue of building permit for erection of business structure. Bill dismissed. Plaintiffs appeal. Affirmed.

*Herbert R. Clark,* for plaintiffs.

*John C. Howell,* City Attorney, for defendants.

BUSHNELL, J.   Plaintiffs, property owners in the city of Adrian, sought an injunction permanently restraining the city commission of Adrian from issuing any building permit for the erection of a structure to be used for business purposes on a lot located at the southwest corner of Toledo and Broad streets.

Plaintiffs do not contest the validity of the Adrian zoning ordinance in its entirety, but attack the validity of that portion of the ordinance which places the west side of Broad street between Church and Toledo streets, and the south side of Toledo street between Broad and North Main streets, in the commercial district.

The zoning ordinance in question was adopted on July 31, 1939, in the regular way, by two readings at one meeting and the third reading at another meeting of the commission.   Efforts were made to get the public interested in this zoning ordinance by advertisement in the Adrian Daily Telegram and display of the ordinance and maps in the city clerk's office for a period of three weeks.   One of the city commissioners testified that, so far as he knew, no one came to the city hall to inspect the ordinance or evidenced any interest in the matter; and that no objections were made by anyone at any of the meetings when the ordinance was read.

Main is the principal north and south street of the city and is also State Highway M-52.   Maumee is the principal east and west street through the business district.   Broad is the first street east of Main and runs parallel with it; and Toledo is the first street north of Maumee and runs parallel with it.   Church is the first parallel street south of Maumee.   The ordinance places the west side of Broad street between Church and Toledo streets and the south side of Toledo street between Broad

and Main streets in the commercial district. The east side of Broad street, except at the corners of Maumee and Broad and Church and Broad, is placed in the residential district.

On the northwest corner of Broad and Maumee streets is the post office, which occupies 126 feet on the west side of the street. The next property to the north is the Baptist Church, which occupies 166 feet; next is the Peterson residence with an 80-foot frontage; and north of this is the property in question known as the Smith residence with 120 feet frontage on Broad street and a depth of 165 feet on the south side of Toledo street. On the east side of Broad street, beginning at the northeast corner of Maumee, is the Methodist Church, directly across the street from the post office. The other properties in order going north of the church are the Redfield and Hart residences; a residence occupied by the Mott Funeral Home, and directly across the street from the Smith property is the residence of Robert T. Moreland. All of the properties north of Toledo on the east side of Broad are residential, as is also the northwest corner of Toledo and Broad streets. On the south side of Toledo, going west from Broad street beyond the depth of the Smith property (165 feet), is the Randall residence, and west of that is the Everiss Funeral Home. Beyond these are several residences, a doctor's office and a commercial garage. A grocery store occupies the southeast corner of Toledo and Main streets.

There is conflict in the testimony as to how adjacent residential values will be affected by business use of the Smith property and considerable complaint is made by some of the witnesses as to the unreasonableness of using the center of Broad street as the boundary line between business and residential districts.

Those who testified on behalf of the city admitted the difficulty caused by the gradual change in the use of property located within a block or two of the business center of the city, namely, the intersection of Maumee and Main streets. At one time the properties occupied by plaintiffs near the corner of Broad and Toledo streets were some of the finest residences in the city. However, business has gradually spread from Maumee and Main east towards Broad and north towards Toledo streets; and there is at the present time considerable congestion of traffic at this corner. The 10 residences on the west side of Broad and the south side of Toledo are in two city blocks which include 75 commercial and non-residential structures. So far as the record indicates, plaintiffs' properties are either within or across the street from this two-block business area.

The "Smith" home, unoccupied for some time, has been for sale for 8 or 9 years. A former county clerk, now engaged in the real estate business, testified that this property is unsuitable for residential purposes and that it cannot be remodeled and made into a profitable apartment building. In his judgment it can only be used profitably for commercial purposes.

The testimony in the record is quite extensive with respect to the industrial growth and activity in the city of Adrian and the change in conditions during the last 10 years. The court concluded that the city commission had acted in a reasonable and fair manner and for the ultimate benefit of the community, and that the inclusion of the west side of Broad street in the commercial district and the east side in the residential district was reasonable.

In the case of *City of Pleasant Ridge* v. *Cooper*, 267 Mich. 603, the court discussed the factors essential to the validity of a zoning ordinance where the

use of property was limited to residential purposes. A zoning ordinance must be reasonable, and its reasonableness becomes the test of its legality. *City of North Muskegon* v. *Miller*, 249 Mich. 52, 57. And see authorities cited in the two opinions, *supra*. In the instant case, the four blocks adjacent to the intersection of Main and Maumee streets are occupied almost exclusively by business and public buildings.

To say that the southwest corner of Broad and Toledo, one block away, should be confined to residential use would be to deny a reasonable and natural use of this property. To permit it to be used for commercial purposes may affect the value of property on the east side of Broad so far as residential use is concerned. However, mere depreciation in value by itself is not enough. The test is whether the zoning classification is unreasonable. See authorities collected in annotations in 86 A. L. R. 659 and 117 A. L. R. 1117 *et seq.* Each zoning case must be determined upon its own facts and circumstances. A careful examination of the testimony presented in the instant case with respect to the character of the neighborhood and the proximity of the property to the center of the business district of Adrian requires agreement with the conclusion reached by the trial judge.

The order of the trial court dismissing plaintiffs' bill of complaint without costs is affirmed. No costs are to be taxed in this court.

SHARPE, C. J., and BOYLES, CHANDLER, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred.